## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ALAN HOBBS,

                    Plaintiff,

v.

SUNFLOWER BANK, N.A.,

                    Defendant.

Case No. 24-2287-DDC

## MEMORANDUM AND ORDER

Plaintiff Alan Hobbs alleges that his former employer, defendant Sunflower Bank, N.A., fired him because of his age. Defendant disagrees, asserting that plaintiff's lackluster performance rightly qualified him for the chopping block, and that no reasonable jury could find that age motivated its decision. Defendant has filed a Motion for Summary Judgment (Doc. 43). This Order denies defendant's motion. Plaintiff has raised a triable issue whether defendant treated a similarly situated employee—one much younger than plaintiff—more favorably than it treated plaintiff. A rational jury could infer that discriminatory animus motivated defendant's decision to discipline and, eventually, terminate plaintiff while taking no action against a younger employee who performed similarly to (or worse than) plaintiff.

## I.    Background

Before explaining the dispute underlying this lawsuit, a brief word about plaintiff's summary-judgment briefing. Plaintiff's Response asserts an astonishing number of facts—243 additional facts spanning nearly 30 pages and citing 65 exhibits. Our court's local rule requires briefs opposing to summary judgment to set forth "a *concise* statement of *material* facts as to which the party contends a genuine issue exists." D. Kan. Rule 56.1(b)(1) (emphasis added).

Plaintiff's facts decidedly aren't concise. Nor are they limited to material issues. The court is unimpressed with this sort of briefing practice, which drains judicial resources by forcing the court to slog through hundreds of facts and dozens of exhibits to discern that few dispositive disputes exist. *See Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913, 927 (10th Cir. 2022) ("Judges are not like pigs, hunting for truffles buried in briefs." (quotation cleaned up)). Litigants opposing summary judgment should limit the fight to the disputed facts that might matter. They shouldn't fire off every fact in their possession indiscriminately. Disputing facts merely to create disputes doesn't help anyone's cause. In the end, plaintiff prevails on this motion. But he succeeds in spite of—not because of—his spaghetti-on-the-wall briefing.

The following facts either are uncontroverted or, if controverted, are construed in a light most favorable to plaintiff. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### *Plaintiff's Employment Termination*

Plaintiff worked for defendant, a national bank. Doc. 42 at 2 (Pretrial Order Stipulations ¶ 2.a.v.). His position title was Commercial Relationship Manager. *Id.* (Pretrial Order Stipulations ¶ 2.a.vii.). Plaintiff was born in December 1964 and was 56 years old when he started working for defendant in Spring 2021. Doc. 44-2 at 4, 5 (Hobbs Dep. 9:20–21, 69:9–14). Defendant terminated his employment about two-and-a-half years later when plaintiff was 58 years old. Doc. 42 at 2 (Pretrial Order Stipulations ¶ 2.a.x.).

Kevin Vanderweide directly supervised plaintiff. Doc. 48-6 at 1 (Vanderweide Decl. ¶ 3). And Eric Comeau directly supervised Mr. Vanderweide. Doc. 44-3 at 8 (Comeau Dep. 33:2–5). In December 2022, Mr. Comeau implemented new expectations for his team, comprising plaintiff, Mr. Vanderweide, and Cole Buckman—who also worked as a Commercial Relationship Manager. *Id.* at 17–18 (Comeau Dep. 168:6–170:15). With these new expectations, Mr. Comeau required his group to: (i) have five face-to-face meetings per week,

(ii) target businesses "that need a fulsome banking relationship . . . more than a lending need[,]" and (iii) submit weekly sheets documenting their "pipeline[s][.]" Doc. 44-10 at 2 (Def. Ex. J). Defendant instituted other changes around this same time. As part of a shift toward emphasizing deposit growth over loan growth, Doc. 44-9 at 10 (Edwards Dep. 90:23–91:15), defendant set plaintiff's 2023 goals at $10,000,000 in new loans and $10,000,0000 in new deposits, Doc. 44-11 at 3 (Def. Ex. K). And defendant set Mr. Buckman's 2023 goals at $12,500,000 in new loans and $12,500,000 in new deposits. Doc. 44-12 at 2 (Def. Ex. L).

Following these changes, plaintiff evidently struggled. By May 2023, plaintiff hadn't logged any new loan production in 2023. Doc. 44-15 at 3 (Def. Ex. O); Doc. 44-2 at 11 (Hobbs Dep. 105:9–21); Doc. 53-2 at 2 (Hickman Decl. ¶ 7) (explaining that the term "production" refers "to loan production").[1] So, defendant placed him on a performance improvement plan ("PIP"). Doc. 44-15 at 2–4 (Def. Ex. O). This PIP directed plaintiff to build a pipeline of prospective businesses within a 250-mile radius of the Kansas City metro area. *Id.* at 3. In effect then, defendant forced plaintiff to abandon his efforts to pursue business in the Chicago metro area. *See id.*; Doc. 48-6 at 4 (Vanderweide Decl. ¶ 24) (explaining that PIP restrictions "deprived [plaintiff] of pursuing and securing business with several companies in the Chicago, Illinois area"); Doc. 48-5 at 12 (Hobbs Dep. 109:13–23). This new geographic restriction was significant because plaintiff had six to eight Chicago-based companies in his pipeline before defendant issued the PIP. Doc. 48-5 at 12 (Hobbs Dep. 108:11–22).[2]

---

[1] Plaintiff tries to controvert this fact. Doc. 48 at 4–5. To do so, plaintiff cites evidence that he received a bonus based on the total deposits in all the accounts he managed. *Id.* But that event was based on employees' total portfolio—not new loan production. Doc. 53-2 at 2 (Hickman Decl. ¶¶ 5–7). So plaintiff has failed to controvert that he didn't have any new loan production when defendant placed him on a PIP.

[2] Defendant controverts this fact, asserting that plaintiff hasn't adduced evidence that he "truly" had six to eight Chicago companies in his pipeline. Doc. 53 at 13. The court disagrees with defendant.

Defendant escalated the PIP to a "Final Written Warning" in September 2023. Doc. 44-18 at 2–4 (Def. Ex. R). This document explained that plaintiff still had "not met performance expectations regarding sales calls and calls with production partners." *Id.* at 3. It also cited plaintiff's failure to generate new business and his failure to build a sales pipeline. *Id.* Plaintiff disputes both rationales. Plaintiff had performed satisfactorily in the first two years of his employment. Doc. 48-6 at 3 (Vanderweide Decl. ¶ 19). And plaintiff maintains that he had built a pipeline of business. For example, in July 2023, plaintiff emailed Mr. Comeau a list of nine companies he was pursuing for business. Doc. 48-12 at 1 (Pl. Ex. FF-4); Doc. 48-8 at 2 (Hobbs Decl. ¶ 6).

A reasonable jury could find that plaintiff also complied sufficiently with defendant's calling requirements. To be sure, Mr. Comeau testified that plaintiff occasionally would fail to comply with the spirit of the requirements by contacting multiple businesses in the same retrial strip center. *See* Doc. 44-3 at 24 (Comeau Dep. 271:13–25). And plaintiff himself admitted that "if you want to nitpick it," he technically wasn't in compliance at all times. Doc. 48-5 at 20 (Hobbs Dep. 141:8–24). But a jury reasonably could find that plaintiff, for the most part, did comply. For instance, Mr. Vanderweide repeatedly reported to his superiors that plaintiff complied with the calling requirements. *E.g.*, Doc. 48-24 at 1 (Pl. Ex. PP); Doc. 48-32 at 1 (Pl. Ex. XX); Doc. 48-27 at 1 (Pl. Ex. SS). Mr. Vanderweide also testified that plaintiff "made cold calls to prospective clients throughout the entirety of the time" Mr. Vanderweide worked for defendant. Doc. 48-6 at 4 (Vanderweide Decl. ¶ 20).

---

A reasonable jury could credit plaintiff's testimony that he had Chicago companies lined up in his pipeline.

Defendant terminated plaintiff's employment on October 16, 2023, setting a final employment date of November 1, 2023. Doc. 42 at 2 (Pretrial Order Stipulations ¶ 2.a.ix.). Cecil Edwards—defendant's Chief Banking Officer—recommended that defendant terminate plaintiff's employment. Doc. 44-23 at 3–4 (Def. Ex. W). The crux of plaintiff's case is that defendant treated a younger employee more favorably than it treated plaintiff. The court outlines the facts about this comparator, next.

### *Cole Buckman*

Plaintiff's struggles resemble those of his fellow team member Cole Buckman. Mr. Buckman worked for defendant as a Commercial Relationship Manager—the same position plaintiff held. Doc. 42 at 2 (Pretrial Order Stipulations ¶ 2.a.vi., vii.). He and plaintiff reported to the same supervisor, Mr. Vanderweide. *Id.* (Pretrial Order Stipulations ¶ 2.a.viii.); Doc. 48-6 at 1 (Vanderweide Decl. ¶ 3). Mr. Buckman was 30 years old when defendant hired him in April 2022. Doc. 48-14 at 1 (Buckman Decl. ¶ 2). Mr. Buckman's starting salary was $170,000—some $25,000 more than plaintiff's starting salary. Doc. 44-7 at 2 (Def. Ex. G); Doc. 48-65 at 2 (Pl. Ex. EEEE).

Mr. Buckman had no production in 2022. Doc. 48-29 at 4 (Pl. Ex. UU). Mr. Comeau acknowledged that Mr. Buckman "wasn't even close to meeting his production goals" between the start of his employment in the spring of 2022 and April 2023. Doc. 48-2 at 43 (Comeau Dep. 242:4–11). In fact, Mr. Buckman didn't bring in a single loan in 2022 or 2023. Doc. 48-3 at 35 (Mitchell Dep. 183:7–10); *see also* Doc. 48-6 at 2 (Vanderweide Decl. ¶ 15) (noting that Mr. Buckman "had no production and was not meeting his production goals" between January 2023 and August 2023). Still, defendant never issued Mr. Buckman a PIP or otherwise reprimanded him. Doc. 48-3 at 19 (Mitchell Dep. 96:10–14); Doc. 48-14 at 2 (Buckman Decl. ¶ 13).

Mr. Buckman also failed to comply with defendant's calling requirements multiple times. For instance, in July 2023, Mr. Vanderweide reported that Mr. Buckman wasn't in compliance with the calling requirements. *E.g.*, Doc. 48-2 at 48 (Comeau Dep. 262:16–263:8); Doc. 48-25 at 1 (Pl. Ex. QQ). And in September 2023, Jenny Mitchell—defendant's HR director—observed at one point that neither plaintiff nor Mr. Buckman were logging their calls properly. Doc. 48-28 at 1 (Pl. Ex. TT). So, when Mr. Comeau directed Mr. Vanderweide to issue a PIP to plaintiff, Mr. Vanderweide questioned why plaintiff would receive a PIP while Mr. Buckman hadn't. Doc. 48-6 at 3 (Vanderweide Decl. ¶ 19).

Mr. Buckman took paternity leave from April 11, 2023, to May 8, 2023. Doc. 48-14 at 2 (Buckman Decl. ¶ 9). He also took FMLA leave from May 19, 2023, to June 1, 2023. *Id.*; Doc. 44-14 at 2 (Def. Ex. N); Doc. 44-6 at 10–11 (Mitchell Dep. 111:11–113:22). Eventually, Mr. Buckman resigned shortly after defendant terminated plaintiff. Doc. 44-9 at 21–22 (Edwards Dep. 189:9–190:3); Doc. 48-14 at 2 (Buckman Decl. ¶ 14).

Based on these facts, plaintiff asserts a single claim—unlawful age discrimination under the Age Discrimination in Employment Act (ADEA). Doc. 42 at 7–8 (Pretrial Order ¶ 4).

## II.    Summary Judgment Standard

Summary judgment is appropriate where the moving party demonstrates there is "no genuine dispute" about "any material fact" and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard dictates that the court "view the evidence and make inferences in the light most favorable to the non-movant." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is

essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart*

*Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

      The moving party bears "'both the initial burden of production on a motion for summary

judgment and the burden of establishing that summary judgment is appropriate as a matter of

law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v.*

*Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To carry this burden, the

moving party "'need not negate the non-movant's claim, but need only point to an absence of

evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO,*

*Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).  Even if the non-moving party fails to respond

adequately, "the district court may not grant the motion without first examining the moving

party's submission to determine if it has met its initial burden of demonstrating that no material

issues of fact remain for trial and the moving party is entitled to judgment as a matter of law."

*Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

      If the moving party satisfies its initial burden, the non-moving party "'may not rest on its

pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those

dispositive matters for which it carries the burden of proof.'"  *Kannady*, 590 F.3d at 1169

(quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*,

477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  The specific "facts must be identified

by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."

*Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144

F.3d at 671).  Affidavits and testimony "must be based upon personal knowledge and set forth

facts that would be admissible in evidence; conclusory and self-serving affidavits are not

sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation cleaned up).

Federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## III.      Analysis

To succeed on an ADEA claim, "a plaintiff must prove that age was a but-for cause of the employer's adverse decision." *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1081 (10th Cir. 2023) (quotation cleaned up). Where, as here, a plaintiff opposing summary judgment presents no "direct evidence of age discrimination," the court applies "the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020) (quotation cleaned up). "At the first step of the analysis, a plaintiff must establish a prima facie case of age discrimination." *Id.* If the plaintiff can establish a prima facie case, "'the burden of production then shifts to the employer to identify a legitimate, nondiscriminatory reason for the adverse employment action.'" *Id.* (quoting *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010)). Finally, after "'the employer advances such a reason, the burden shifts back to the plaintiff to prove the employer's proffered reason was pretextual.'" *Id.* (quoting *Jones*, 617 F.3d at 1278).

### A.      Prima Facie Case and Pretext

To make out a prima facie case of age discrimination under the ADEA, plaintiff must show that he "is a member of a protected class, [he] suffered an adverse employment action, and

the challenged action occurred under circumstances giving rise to an inference of

discrimination." *Bennett v. Windstream Comm'cns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015).[3]

No one disputes that plaintiff was a member of a protected class—he was more than 40

years old. *See Frappied*, 966 F.3d at 1054 n.13 (explaining that "the ADEA protects only

workers who are at least forty years old" (citing 29 U.S.C. § 631(a)). And, plaintiff plainly

"suffered an adverse employment action because [he] was fired." *Walkingstick Dixon v.*

*Oklahoma ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1336 (10th Cir.

2025).

So, all the action begins on the third element—whether plaintiff has adduced evidence

that the manner in which defendant fired plaintiff "occurred under circumstances giving rise to

an inference of discrimination." *Bennett*, 792 F.3d at 1266. As it turns out, the dispositive

question—both for plaintiff's prima facie case and for the pretext inquiry—is whether plaintiff

---

[3]      The Tenth Circuit has articulated several variations of this test depending on the circumstances of
the case. *E.g.*, *Mauldin v. Driscoll*, 136 F.4th 984, 996 (10th Cir. 2025) (adding another element that the
plaintiff was "qualified for the position at issue"); *Jones*, 617 F.3d at 1279 ("To prove a prima facie case
of age discrimination, a plaintiff must show:  1) she is a member of the class protected by the ADEA; 2)
she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was
treated less favorably than others not in the protected class." (quotation cleaned up)); *Markley*, 59 F.4th at
1081 ("To establish a prima facie case of age discrimination, the plaintiff must show that (1) he is within
the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position
was filled by a younger person." (quotation cleaned up)). The "elements of a prima facie case under the
*McDonnell Douglas* framework are neither rigid nor mechanistic, and their purpose is the establishment
of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's
favor." *Frappied*, 966 F.3d at 1056 (quotation cleaned up). So, altering this test depending on the facts
alleged makes sense. As our Circuit has explained in the Title VII context, the "'critical prima facie
inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred
under circumstances which give rise to an inference of unlawful discrimination.'" *Barlow v. C.R.*
*England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (quoting *Plotke v. White*, 405 F.3d 1092, 1100 (10th
Cir. 2005)).

has adduced sufficient evidence for a rational jury to find that plaintiff and Mr. Buckman were similarly situated employees.[4]

A "plaintiff may raise an inference of discrimination by showing . . . 'that the employer treated similarly situated employees more favorably[.]'" *Walkingstick Dixon*, 125 F.4th at 1335 n.6 (quoting *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005)). The same evidence may support an inference that an employer's nondiscriminatory explanation is pretextual. As our Circuit has explained, "showing disparate treatment—by demonstrating that the employer treated employees similarly situated to the plaintiff employee differently (i.e., more favorably)—is a particularly potent instrument to discredit an employer's allegedly legitimate reasons." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1311 (10th Cir. 2017); *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007) (explaining—in the ADEA context—"that evidence that similarly situated employees received different treatment than the plaintiff is indicative of pretext"). And Circuit precedent permits a plaintiff to use the same evidence to prove his prima facie case and pretext. *See English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1009 (10th Cir. 2001) ("In certain cases, a plaintiff's prima facie case and the inferences that may be drawn therefrom themselves cast sufficient doubt on a defendant's nondiscriminatory reason to satisfy his burden of showing pretext."); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) ("[T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the

---

[4]    Defendant's opening brief argues that plaintiff can't set forth a prima facie case because he wasn't performing adequately. Doc. 44 at 19–21. Defendant has abandoned this argument by failing to address it in his reply brief. *See generally* Doc. 53; *see BD Med. Supplies LLC v. Bluestem Mgmt. Advisors, LLC*, 685 F. Supp. 3d 1062, 1070 n.4 (D. Kan. 2023) ("Based on defendants' failure to address this argument in the Reply, the court can consider it abandoned."). Regardless, the similarly-situated-employee inquiry subsumes defendant's argument that plaintiff wasn't performing satisfactory work. That is, so long as plaintiff adduces sufficient evidence that a younger employee performed similarly to plaintiff but faced no adverse employment action, plaintiff can succeed in arguing his prima facie case.

defendant's explanation is pretextual." (quotation cleaned up)); *see also Jenny v. L3 Harris Techs., Inc.*, 144 F.4th 1194, 1202–03 (10th Cir. 2025) (Eid, J., concurring) (worrying, in critique of *McDonnell Douglas* framework, that district courts might adhere too rigidly to three-part framework and *Reeves* while losing sight of the ultimate issue: that is, whether a jury, viewing the facts in the light most favorable to plaintiff, could infer discrimination). To that end, the court takes up the inference-of-discrimination and pretext stages simultaneously. Because, the court concludes, plaintiff has adduced sufficient evidence for a jury to conclude that defendant treated plaintiff's younger coworker more favorably, plaintiff has carried his burden at both the first and third steps of the *McDonnell Douglas* inquiry.[5]

Similarly situated employees are those employees "reporting to the same supervisor, held to the same standards, and afoul of those standards at least to the same degree." *Roberts v. Int'l Bus. Machs. Corp.*, 733 F.3d 1306, 1310 (10th Cir. 2013). Our Circuit has instructed that "whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Riggs*, 497 F.3d at 1117 (quotation cleaned up): *see also Lucero v. Sandia Corp.*, 495 F. App'x 903, 909 (10th Cir. 2012) ("Whether employees are similarly situated—*i.e.*, whether they are similar in all material respects—is a fact-intensive inquiry, and what facts are material will vary depending on the case." (quotation cleaned up)). Plaintiff bears the ultimate burden to dispel

---

[5] At step two of *McDonnell Douglas*, defendant must offer a nondiscriminatory reason for its actions. Defendant "'does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion.'" *Frappied*, 966 F.3d at 1058 (quoting *EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992)). The employer's burden at this step is "exceedingly light." *DePaul v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (quotation cleaned up).

The court has no trouble concluding that defendant has satisfied its burden at this second step by proffering a facially neutral explanation for terminating plaintiff. Defendant asserts that it fired plaintiff for poor performance. Doc. 44 at 21; Doc. 44-15 at 3 (Def. Ex. O) (asserting that plaintiff hadn't logged any production in 2023 and maintained an inadequate pipeline). Plaintiff never contests that defendant has carried its burden at this second step. *See generally* Doc. 48. So, plaintiff must shoulder his burden at the first and third steps to survive summary judgment.

defendant's alternative explanations for its different treatment of an alleged comparator.

*Roberts*, 733 F.3d at 1310.

Here, plaintiff has adduced sufficient evidence for a rational trier of fact to conclude that he and Mr. Buckman were similarly situated. The parties agree. Plaintiff and Mr. Buckman held the same job title—Commercial Relationship Manager—and reported to the same supervisor, Mr. Vanderweide. Doc. 42 at 2 (Pretrial Order Stipulations ¶ 2.a.vii., viii.). Mr. Vanderweide attested that he was "aware of no differentiating circumstances that should have distinguished [defendant's] treatment of Mr. Hobbs and Mr. Buckman." Doc. 48-6 at 2 (Vanderweide Decl. ¶ 9). Mr. Buckman testified similarly. Doc. 48-14 at 1 (Buckman Decl. ¶ 6). All this matters because Mr. Buckman—though performing similarly to or worse than plaintiff—never faced discipline, reprimand, or termination. *Id.* at 2 (Buckman Decl. ¶¶ 10, 13). In short, a rational factfinder could conclude that Mr. Buckman is similarly situated to plaintiff.

Mr. Vanderweide also attested that Mr. Comeau arbitrarily treated plaintiff and Mr. Buckman differently. Each week, Mr. Vanderweide reported to Mr. Comeau whether plaintiff and Mr. Buckman had complied with company-imposed requirements. Doc. 48-6 at 3 (Vanderweide Decl. ¶ 17). When Mr. Vanderweide reported that Mr. Buckman wasn't in compliance, Mr. Comeau "never said anything in response." *Id.* In contrast, "on those few occasions when [plaintiff] was not in compliance, Eric [Comeau] responded negatively." *Id.* Mr. Vanderweide also explained that when plaintiff was in compliance, Mr. Comeau "would pick at and question whether this was true." *Id.* But he never questioned Mr. Vanderweide when he reported Mr. Buckman was in compliance. *Id.* From this inconsistent treatment, a rational factfinder could infer discriminatory animus.

Sensing that this inconsistent treatment isn't a good look, defendant offers four bases for its differential treatment of Mr. Buckman—length of employment, parental leave, attitude, and business pipeline. Doc. 44 at 24; Doc. 53 at 23–24. While a rational factfinder might accredit these differentiations, it's equally true that such a factfinder could reject all these explanations. In other words, a rational jury could conclude that plaintiff and Mr. Buckman were similarly situated. The court addresses each iteration of this question, in turn, below.

### 1.    Paternity Leave

Defendant first seeks to distinguish its favorable treatment of Mr. Buckman based on Mr. Buckman's paternity leave. Doc. 44 at 24; Doc. 53 at 23. As defendant tells it, Mr. Buckman was on leave when defendant issued a PIP to plaintiff. Doc. 44 at 24. And Mr. Buckman's leave "reasonably affect[ed] his ability to bring in business" in 2023. Doc. 53 at 23. True, Mr. Buckman took leave in April and May 2023. Doc. 48-14 at 2 (Buckman Decl. ¶ 9). But even accounting for this leave, a reasonable jury could conclude that Mr. Buckman was similarly situated to plaintiff.

As an initial issue, Mr. Buckman remained on staff with defendant for nearly six months after defendant placed plaintiff on a PIP. *See* Doc. 44-9 at 21–22 (Edwards Dep. 189:9–190:3). And Mr. Buckman acknowledges that he continually failed to meet his production quotas. Doc. 48-14 at 2 (Buckman Decl. ¶¶ 11, 13). He didn't produce any loan business for defendant in 2022 or 2023. Doc. 48-3 at 35 (Mitchell Dep. 183:7–10); Doc. 48-4 at 9 (Edwards Dep. 61:16–20). Still, Mr. Buckman never faced discipline. Doc. 48-14 at 2 (Buckman Decl. ¶ 13). So even crediting the notion that Mr. Buckman deserved extra time—due to his paternity leave—to produce before receiving a PIP, Mr. Buckman had plenty of time. That is, Mr. Buckman had no production over a longer timeframe than plaintiff. And still, he faced no repercussion—no PIP, no reprimand, no termination. Plus, it's not clear why Mr. Buckman's absence when defendant

issued a PIP to plaintiff effectively would immunize him from ever receiving a PIP. A jury rationally could reject Mr. Buckman's paternity leave as explaining this difference.

### 2.    Tenure of Employment

Defendant next asserts that its favorable treatment of Mr. Buckman makes sense because it hired Mr. Buckman a year after plaintiff. Doc. 44 at 24. Defendant never explains why this distinction matters. *See id.* The court considers this conclusory argument waived. *See United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) (explaining that "arguments may be deemed waived when they are advanced . . . only in a perfunctory manner" (quotation cleaned up)). It fails substantively, too.

Courts have recognized that tenure of employment may present a differentiating circumstance, undermining an otherwise suitable comparator. *See Filar v. Bd. of Educ.*, 526 F.3d 1054, 1062 (7th Cir. 2008) ("To the extent that seniority is a simple proxy for something like the length of employment and is something that an employer must credit when making employment decisions, differences in seniority will tend to make two employees dissimilar for purposes of the plaintiff's prima facie case."). But this difference typically arises in situations where the comparator is the more senior employee—and receives extra protection by virtue of a longer tenure of employment. *See id.* Here, it's just the opposite: Defendant inexplicably asserts that Mr. Buckman was due extra protection by virtue of his shorter tenure. That characteristic, a reasonable jury could find, suggests discrimination. What's more, where the tenure of employment "is unmoored from everything but the discretion of the employer, the simple fact that the comparator" has worked for the employer for a different length of time "may not be dispositive[.]" *Id.*

Also, Mr. Buckman already was working for defendant when Mr. Comeau instituted his new standards on Mr. Vanderweide and Mr. Vanderweide's direct reports, plaintiff and Mr.

Buckman. So, these standards applied to both plaintiff and his younger counterpart. Defendant has failed to explain why Mr. Buckman deserved favorable treatment based on his shorter tenure of employment—especially when the difference in plaintiff and Mr. Buckman's employment was less than one year. Doc. 44-7 at 2 (Def. Ex. G) (identifying Mr. Buckman's start date as May 18, 2022); Doc. 48-65 at 2 (Pl. Ex. EEEE) (identifying plaintiff's start date as May 27, 2021). A rational factfinder easily could reject this perfunctory explanation.

### 3.    Attitude

Defendant's next explanation for its differential treatment is that Mr. Buckman portrayed a "drastically different attitude" than plaintiff and was "urgently working[.]" Doc. 44 at 24; Doc. 53 at 24. A rational jury could reject this subjective distinction. To be sure, Mr. Edwards noted that he thought Mr. Buckman was "urgently working[.]" Doc. 44-22 at 3 (Def. Ex. V). And he never offered such praise of plaintiff. But Mr. Vanderweide saw it differently. He explained that plaintiff and Mr. Buckman "gave equal effort to developing business for" defendant. Doc. 48-6 at 4 (Vanderweide Decl. ¶ 21). And, he attested, at "no time did [Mr. Buckman] show more effort in recruiting business" for defendant than plaintiff. *Id.* So a rational juror might question whether Mr. Edwards's belief in the relative degree of effort between plaintiff and Mr. Buckman was sincerely held.[6]

Plus, a jury reasonably could second-guess defendant's subjective assessments of its employees' attitudes. "Courts view with skepticism subjective evaluation methods[.]" *Garrett*

---

[6]    To be sure, the relevant inquiry for pretext is based on "the facts as they appear to the person making the decision to terminate plaintiff." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000). And it's possible that Mr. Edwards—as the ultimate decisionmaker—observed facts that justified his belief that Mr. Buckman portrayed a better work ethic than plaintiff. But defendant hasn't explained what facts justified that conclusion. So, in light of Mr. Vanderweide's testimony to the contrary, a rational jury could question whether Mr. Edwards sincerely believed that Mr. Buckman had a better attitude about work than plaintiff. Regardless, as the court discusses next, a factfinder independently could reject this sort of subjective criteria.

*v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002) (compiling cases). That's so because employers easily can wield subjective criteria as subterfuge for discrimination. *See id.*; *Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1274 (10th Cir. 2006) (observing that "subjective criteria . . . are particularly easy for an employer to invent in an effort to sabotage a plaintiff's prima facie case and mask discrimination" (quotation cleaned up)). Courts regularly opine that employers easily can manipulate how they evaluate employees' attitudes to cloak discrimination. *E.g.*, *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) ("[L]ow evaluation scores may be a pretext for discrimination, especially where, as here, an employer uses subjective criteria such as 'attitude' and 'teamwork' to rate its employees."); *Pierce v. City of Philadelphia*, No. 17-05539, 2018 WL 6832093, at *11 (E.D. Pa. Dec. 28, 2018) (explaining that "an employer's subjective evaluation of qualities like 'attitude' and 'teamwork' or 'drive, selling process, and relationship building' . . . are more susceptible of abuse and more likely to mask pretext" (quotation cleaned up)); *Whitby v. Parker Coll. of Chiropractic*, No. 01–CV–2277N, 2003 WL 22244679, at *5 (N.D. Tex. Sept. 30, 2003) (noting that "factors such as poor attitude are subjective and are capable of being used to mask discriminatory intent"). Because plaintiff and Mr. Buckman's production was similar, a jury reasonably could conclude defendant manufactured its "plaintiff-has-a-bad-attitude" explanation or used this explanation to cover discrimination.

### 4.    Business Pipeline

Finally, defendant argues a performance gap explains its differential treatment of plaintiff and Mr. Buckman. Doc. 44 at 24; Doc. 53 at 24. According to defendant, Mr. Buckman had three business deals in his pipeline. Doc. 44-9 at 19 (Edwards Dep. 178:8–11). On the other hand, defendant asserts, plaintiff was not building a pipeline of business. Doc. 53 at 24. True, Mr. Edwards testified that—for plaintiff—he "just did not see a pipeline[.]" Doc. 44-9 at 18

(Edwards Dep. 177:15–21).  But based on this summary judgment record, it's not entirely clear what a business "pipeline" is.  Defendant's employees didn't explain this term consistently.  For instance, Ms. Mitchell testified that determining whether an employee has an active pipeline is a subjective exercise.  Doc. 48-3 at 37 (Mitchell Dep. 202:24–203:2).  Mr. Comeau, on the other hand, disagreed.  Doc. 48-2 at 53 (Comeau Dep. 295:15–20).  He offered this unhelpful circular definition:  "An active pipeline means you have deals you are working on in your pipeline."  *Id.* A jury rationally could reject defendant's explanation for its different treatment of Mr. Buckman based on his pipeline.

As an initial matter, viewed in the light most favorable to plaintiff, the criteria for determining an employee's pipeline was subjective—or at least incorporated subjective elements.  Apart from Ms. Mitchell's testimony to that effect, *see* Doc. 48-3 at 37 (Mitchell Dep. 202:24–203:2), different members of defendant's organization offered different assessments of Mr. Buckman's pipeline.  Mr. Edwards—based on his discussions with Mr. Comeau—believed that Mr. Buckman had three potential deals in his pipeline.  Doc. 44-9 at 16, 19 (Edwards Dep. 168:4–13, 178:8–11).  Meanwhile, Mr. Vanderweide attested that, as far as he knew, Mr. Buckman never had "potential or even likely prospects" for business before Mr. Vanderweide's employment ended.  Doc. 48-6 at 5 (Vanderweide Decl. ¶ 29).  As it turns out, Mr. Buckman's pipeline—or his lack of one—never blossomed into business for defendant.  Doc. 48-4 at 26 (Edwards Dep. 179:9–11).  A jury might look at the conflicting ways that defendant's employees assessed Mr. Buckman's pipeline and conclude that a "pipeline" isn't the sort of objective criteria that is "immune to employer manipulation[.]"  *Cortez*, 460 F.3d at 1273–74.

Even assuming that assessing a pipeline is an objective exercise, a reasonable jury could find that plaintiff had an active pipeline.  Recall that plaintiff had emailed his superiors,

17

including Mr. Comeau, a list of nine companies he was pursuing for business. Doc. 48-12 at 1 (Pl. Ex. FF-4). It's not clear why defendant chose not to count this list of companies toward plaintiff's pipeline.[7] That is, defendant hasn't explained why it treated the three nascent business opportunities in Mr. Buckman's portfolio as bona fide but discounted plaintiff's as not "legitimate and/or viable prospects." Doc. 53 at 16. Plaintiff also presented evidence that he actively was building a pipeline of Chicago-based business. *See* Doc. 48-6 at 4–5 (Vanderweide Decl. ¶ 25); Doc. 48-8 at 1–2 (Hobbs Decl. ¶¶ 4–5). In fact, defendant's own documents—specifically the PIP defendant drafted for plaintiff—acknowledge that plaintiff indeed had some pipeline of business in Chicago. Doc. 44-15 at 3 (Def. Ex. O) (highlighting that plaintiff's "pipeline consists of only Chicago based Companies"). But defendant forced plaintiff to abandon this pipeline when it placed him on a PIP. *See* Doc. 48-6 at 4–5 (Vanderweide Decl. ¶¶ 24–25); Doc. 48-8 at 1–2 (Hobbs Decl. ¶¶ 4–5). And Mr. Vanderweide opined that plaintiff would have met "some or potentially all of his production goals for 2023" had defendant not imposed its new geographic restrictions. Doc. 48-6 at 4–5 (Vanderweide Decl. ¶ 25). A factfinder could conclude that plaintiff and Mr. Buckman had similar pipelines or that defendant arbitrarily hindered plaintiff's ability to build a pipeline.[8]

---

[7]     Defendant disputes "any suggestion" that this list of companies from plaintiff represented "legitimate and/or viable prospects." Doc. 53 at 16. In support, defendant cites testimony from Mr. Comeau that plaintiff occasionally would go on calls to a retail strip center, collect business cards from several business, and use those as proof that he fulfilled his call quota. *Id.*; Doc. 44 at 9; Doc. 44-3 at 24 (Comeau Dep. 271:13–25). That testimony says nothing about the list of companies plaintiff was pursuing. Defendant thus has failed to explain why it discounted this list of business opportunities.

[8]     Defendant disputes that plaintiff wasn't allowed to pursue business in Chicago. Doc. 53 at 15. But viewed in the light most favorable to plaintiff, a jury could conclude that defendant obstructed plaintiff's attempts to pursue Chicago business. Plaintiff has adduced evidence—from Mr. Vanderweide's declaration and from plaintiff's declaration—that plaintiff's PIP required him to forgo his pursuit of business from Chicago. Doc. 48-6 at 4–5 (Vanderweide Decl. ¶ 25); Doc. 48-8 at 1–2 (Hobbs Decl. ¶¶ 4–5). In fact, the PIP itself directed plaintiff to "focus on building a pipeline consisting of . . . opportunities in a 250 mile radius of the Kansas City metro." Doc. 44-15 at 3 (Def. Ex. O). Defendant, for its part, asserts that plaintiff couldn't "identify a single prospect that was rejected for being in

Defendant also asserts that plaintiff didn't comply with its cold-calling requirements while Mr. Buckman did.  Doc. 44 at 24; Doc. 53 at 24.  Defendant cites evidence that plaintiff would skirt the spirit of the calling requirements by contacting adjacent businesses.  *See* Doc. 44-3 at 24 (Comeau Dep. 271:13–25).  And, plaintiff admitted that he didn't comply with these requirements at all times.  Doc. 48-5 at 20 (Hobbs Dep. 141:8–24).  But plaintiff did comply with them most of the time.  *E.g.*, Doc. 48-24 at 1 (Pl. Ex. PP); Doc. 48-32 at 1 (Pl. Ex. XX); Doc. 48-27 at 1 (Pl. Ex. SS).  And Mr. Vanderweide reported favorably on plaintiff's calling efforts, noting that plaintiff routinely "made cold calls to prospective clients[.]"  Doc. 48-6 at 4 (Vanderweide Decl. ¶ 20).  So, a rational jury could disagree that plaintiff's calling efforts furnished an adequate basis for terminating him.

Even supposing that plaintiff wasn't complying with these requirements, plaintiff has adduced sufficient evidence that Mr. Buckman wasn't either.  For instance, in July 2023, Mr. Vanderweide reported that Mr. Buckman had not complied with the calling requirements.  *E.g.*, Doc. 48-2 at 48 (Comeau Dep. 262:16–263:8); Doc. 48-25 at 1 (Pl. Ex. QQ).  And in September 2023, defendant's HR director observed that neither plaintiff nor Mr. Buckman were logging their calls properly.  Doc. 48-28 at 1 (Pl. Ex. TT).  Still, defendant never reprimanded, disciplined, or terminated Mr. Buckman.

---

Chicago" when deposed.  Doc. 53 at 12 (citing Doc. 48-5 at 12, 13 (Hobbs Dep. 108:23–109:12, 113:5–14)).  True, at his deposition, plaintiff couldn't recite a *specific* Chicago company defendant blocked plaintiff from pursuing.  Doc. 48-5 at 13 (Hobbs Dep. 113:5–14).  But this isn't the gotcha that defendant thinks it is.  At his deposition plaintiff asserted that defendant rejected transactions with Chicago-based companies and that he just couldn't recall the specific company.  *Id.*; *id.* at 12 (Hobbs Dep. 108:11–109:7).  Defendant's right.  A reasonable jury might interpret this evidence and discredit plaintiff's assertion of a Chicago pipeline.  But reasonably, it might not.  And the court can't resolve this factual dissonance in defendant's favor on summary judgment.  Indeed, it's just the opposite.  At summary judgment, the court must give plaintiff the benefit of this contested inference.  In short, plaintiff has put forth sufficient evidence for a jury to conclude that defendant meddled with his attempts to secure Chicago-based business.

All together, and put simply, a factfinder rationally could assess this whole picture and discredit defendant's explanation that Mr. Buckman deserved different treatment because he was outperforming plaintiff. Viewed in the light most favorable to plaintiff, defendant roadblocked plaintiff's success by arbitrarily instructing him to abandon his existing Chicago-based pipeline and then cherrypicked easy-to-manipulate standards to justify firing plaintiff. And defendant ignored Mr. Buckman's comparable—or worse—performance. A reasonable jury thus might infer that defendant's proffered explanations for its differential treatment are pretextual and don't dispel the inference of discrimination. In short, a reasonable jury could conclude that defendant's proffered difference between plaintiff and Mr. Buckman fail to persuade and the two were similarly situated employees.[9]

## B.    Conclusion – Summary Judgment

Plaintiff's claim survives summary judgment. Evidence that "'an employer treated similarly situated employees more favorably'" raises an inference of discrimination. *Walkingstick Dixon*, 125 F.4th at 1335 n.6 (quoting *Sorbo*, 432 F.3d at 1173). That same evidence is "indicative of pretext." *Riggs*, 497 F.3d at 1120. Plaintiff has presented evidence from which a reasonably jury could find that defendant treated Mr. Buckman—a younger, similarly situated employee—more favorably than it treated plaintiff. This evidence suffices to carry plaintiff's *McDonnell Douglas* burden at summary judgment. Because a rational finder of fact could conclude that age was a but-for cause of defendant firing plaintiff, the court denies defendant's Motion for Summary Judgment (Doc. 43).

---

[9]    Because the court concludes that plaintiff's arguments about defendant's treatment of a similarly situated employee suffice to raise a triable issue of pretext, the court needn't consider plaintiff's other pretext arguments.

**IV.      Sealing Motions**

On a final housekeeping matter, the court decides two pending sealing motions.  Doc. 50;

Doc. 55.  The court grants these motions.  "A party seeking to file court records under seal must

overcome a presumption, long supported by courts, that the public has a common-law right of

access to judicial records."  *Luo v. Wang*, 71 F.4th 1289, 1304 (10th Cir. 2023) (quotation

cleaned up).  "The Court may order the sealing of documents if competing interests outweigh the

public's interest."  *Parker v. United Airlines, Inc.*, 49 F.4th 1331, 1343 (10th Cir. 2022).

Both parties seek to seal information relating to one of defendant's clients.  Defendant

seeks to seal information about the client because, it argues, divulging this information could

hurt its "competitive standing[.]"  Doc. 55 at 2.  Plaintiff asks the court to seal similar

information about the client's financial health and status.  He argues that revealing this

information could damage the client's "business, business relationships, and finances[.]"  Doc.

50 at 2.

The court concludes that competing interests here outweigh the public's right of access.

Courts routinely grant motions to seal confidential information about businesses' clients.  *See Ol*

*Private Counsel, LLC v. Olson*, No. 21-cv-00455, 2025 WL 1724651, at *9 (D. Utah June 20,

2025) (granting motion to seal documents "contain[ing] confidential client information");

*Elevate Fed. Credit Union v. Elevations Credit Union*, 67 F.4th 1058, 1084 (10th Cir. 2023)

(granting motion to seal "confidential business and financial information").  Plus, the court

didn't reference any of the sealed information in these documents to decide this motion.  So the

public has a lesser interest in accessing this information.  *See Ol Private*, 2025 WL 1724651, at

*9 ("Where the content of these emails appears irrelevant to the issues raised on summary

judgment, public interest in access is minimal.");  *cf. JetAway Aviation, LLC v. Bd. of Cnty.*

*Comm'rs*, 754 F.3d 824, 827 (10th Cir. 2014) (explaining that the public has an interest in

records "that inform our decision-making process" (quotation cleaned up)).  The court concludes

that competing interests outweigh the public's minimal interest in accessing these documents,

which the court didn't cite or analyze.

The court thus grants these Motions to Seal (Doc. 50; Doc. 55).  The court directs the

Clerk of the Court to seal Doc. 48, Doc. 48-13, Doc. 53-1, and Doc. 57 permanently.  The court

orders plaintiff to file a redacted version of Doc. 48 on the docket in this case within seven days

of this Order.[10]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Sunflower

Bank, N.A.'s Motion for Summary Judgment (Doc. 43) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff Alan Hobbs's Motion to Seal or Redact

Documents (Doc. 50) is granted.  Plaintiff must file a redacted version of Doc. 48 on the docket

in this case within seven days of this Order.  The court directs the Clerk to seal Doc. 48 and Doc.

48-13 permanently.

**IT IS FURTHER ORDERED THAT** defendant Sunflower Bank, N.A.'s Motion to

Seal or Redact Documents (Doc. 55) is granted.  The court directs the Clerk to permanently seal

Doc. 53-1 and Doc. 57 permanently.

---

[10]    The court notes that plaintiff failed to comply with D. Kan. Rule 5.4.2(c), which requires the proponent of redactions to "email the document to chambers with its proposed redactions highlighted in yellow."  But plaintiff has described his proposed redactions.  *See* Doc. 55 at 2.  The court reluctantly accepts this description in lieu of the rules-required email.

As the court explained its previous Order (Doc. 56), defendant violated D. Kan. Rule 5.4.2 by filing a redacted document (Doc. 53) provisionally under seal instead of filing the unredacted version under seal.  The court reminds the parties that local rules aren't suggestions—they're binding mandates with "the force of law."  *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (quotation cleaned up).

**IT IS SO ORDERED.**

**Dated this 31st day of October 2025, at Kansas City, Kansas.**

                                           **s/ Daniel D. Crabtree**
                                           **Daniel D. Crabtree**
                                           **United States District Judge**